UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SANDRA PATRICK,

Plaintiff,

v.

STRYKER CORPORATION,

Defendant.

No. 1:25-CV-03876

Judge Edmond E. Chang

MEMORANDUM OPINION AND ORDER

Sandra Patrick co-owned Smart Medical Technology, Inc., which sold its assets to Sage Products, LLC, in 2015. R. 1, Compl. ¶¶ 1, 3.[1] Patrick alleges that she has not received the appropriate payments pursuant to the asset-purchase agreement between Smart and Sage, so she has sued Stryker Corporation, which is the parent corporation of Sage.[2] *Id.* ¶¶ 6, 44–46. Stryker moves to dismiss the Complaint, arguing that the underlying contract had only two parties, Smart and Sage—not Patrick and not Stryker. R. 18, Def.'s Mot. at 3–5. So, in Stryker's view, Patrick lacks any contractual rights, and even if she could sue to enforce the contract, suit would be

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over this case under diversity jurisdiction. 28 U.S.C. § 1332(a). Patrick is a citizen of Illinois, R. 13, Pl.'s Jurisdictional Statement at 1, and Stryker is a Michigan corporation with its principal place of business in Michigan, Compl. ¶ 5. Although Patrick does not specify precisely how much she seeks to recover, the payments she references each independently are in the magnitude of hundreds of thousands of dollars, so the amount in controversy readily exceeds $75,000. *Id.* ¶¶ 28–31.

improper against Stryker. *Id.* For the following reasons, the Court grants Stryker's motion and dismisses the Complaint.

## I. Background

On January 26, 2015, Smart and Sage executed an asset-purchase agreement permitting Sage to acquire a line of medical products. Compl. ¶¶ 22–26; R. 1-1, Pl.'s Exh. A, Asset-Purchase Agr. at 1. In return for the rights to the products, Sage promised to pay Smart cash for three categories: (a) a lump sum; (b) fair value for Smart's inventory; and (c) earn-out payments based on the products' sales. Compl. ¶¶ 27–29; Pl.'s Exh. A, Asset-Purchase Agr. at 8–11. The earn-out payments are triggered by net sales in each of three 12-month periods; for example, in the initial 12-month period—from April 1, 2015, to March 31, 2016—Sage would pay Smart $500,000 if net sales reached $2,000,000 and an additional 20% of all net sales exceeding $2,000,000. Compl. ¶¶ 28–29, 31; Pl.'s Exh. A, Asset-Purchase Agr. at 8–11. Smart ultimately dissolved on June 8, 2018, leaving Patrick as the "sole successor-in-interest." Compl. ¶¶ 3–4.

On April 10, 2025, Patrick filed this suit against Stryker. Compl. She alleges that Sage and Stryker have not provided "a full, complete and accurate accounting of the information required to determine" the earn-out payments by not correctly calculating sales and by not including the sales of certain technologies and products. *Id.* ¶ 42. So she seeks a "detailed accounting" to determine the amount in earn-out payments that Stryker owes her. *Id.* at 14. Stryker now moves to dismiss the Complaint, arguing that neither it nor Patrick were parties to the asset-purchase agreement.

Def.'s Mot. at 3–5. In Stryker's view, Patrick thus fails to state a claim upon which relief can be granted. *Id.* at 2–3; Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police*

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Patrick's Contractual Rights

Stryker first contends that Patrick was not a party to the contract and was also not assigned any rights under the contract, so she cannot sue to enforce the contract. Def.'s Mot. at 3–4. Patrick asserts in response that, because Smart dissolved more than five years ago, she may now sue as a shareholder to recover "fixed amounts." R. 31, Pl.'s Resp. at 5.

The parties agree that Illinois law normally provides a five-year window for a corporation to sue or be sued after it dissolves, and they agree that the window has closed.[4] 805 ILCS 5/12.80; Pl.'s Resp. at 5; R. 32, Def.'s Reply at 2. Patrick attempts to avail herself of an exception to that five-year window: that a shareholder may sue over a corporate claim after the end of the initial five-year period if the claim "represents a debt, fixed in amount, and is evidenced by a document." *Sharif v. Int'l Dev. Grp. Co.*, 399 F.3d 857, 861 (7th Cir. 2005) (cleaned up). In her view, the earn-out

---

[4]Illinois law applies to this dispute pursuant to the choice-of-law provision found in the asset-purchase agreement. Pl.'s Exh. A, Asset-Purchase Agr. at 37.

payments are fixed debts because the asset-purchase agreement provides "fixed amounts owed." Pl.'s Resp. at 5.

But the earn-out payments are not fixed. Although some of the earn-out payments are static amounts, that is not how courts define "fixed." Each payment relies on a condition precedent—net sales of a sufficient amount—and many depend on calculating a percentage of net sales past an initial threshold. Pl.'s Exh. A, Asset-Purchase Agr. at 8–10. The term "fixed," by contrast, refers to "a corporate claim reduced to a judgment," *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1187 (7th Cir. 1980), "a sum certain" as stated in a contract or judgment, *cf.* *Weiss v. U.S. Fid. & Guar. Co.*, 132 N.E. 749, 751–52 (Ill. 1921); *In re Marriage of Hyman*, 261 N.E.3d 723, 732 (Ill. App. Ct. 2024), or a promissory note, *Shute v. Chambers*, 492 N.E.2d 528, 531–32 (Ill. App. Ct. 1986). And payments that "depend[] upon a contingency" also lose their promissory-note character because payment then is not "absolute[] and unconditional[]." *Sharif*, 399 F.3d at 864. Patrick thus cannot sue to enforce the asset-purchase agreement and recover earn-out payments as a successor shareholder.

### B. Stryker's Contractual Liabilities

Even if Patrick could sue to enforce the contract, she has not adequately alleged that she can sue Stryker rather than Sage. Patrick advances two theories for why Stryker can be liable: first, Stryker directly participated in Sage's actions, and second, Stryker expressly or implicitly assumed Sage's liability when the former acquired the latter. Pl.'s Resp. at 5–9.

5

On Patrick's first theory of direct-participant liability, although the theory permits recovery from a parent corporation in certain contexts, *see, e.g.*, *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007) (wrongful-death suit), it "does not authorize the imposition of liability for breach of contract," *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) (cleaned up). Patrick cites no authorities that suggest that direct-participant liability extends to breach-of-contract claims (nor has the Court found any case like that), so Partick has failed to overcome the default presumption that contracts do not bind non-parties, *see id.* at 650.[5]

Second, Patrick has not adequately alleged that Stryker expressly or implicitly assumed Sage's liability. As Patrick acknowledges, "[t]he well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997). Patrick points to passages from her Complaint purporting to allege that Stryker, not Sage, communicated with her and that Stryker held Sage out as its corporate subdivision. Pl.'s Resp. at 8–9. But these allegations cannot overcome the express terms of the asset-purchase agreement, which provided that Sage "may assign its rights under" the agreement to Stryker, yet "in each such case [Sage] will nonetheless remain liable for all of its obligations hereunder." Pl.'s Exh. A, Asset-

---

[5]The Court does not discuss whether Patrick could attempt to pierce Stryker's corporate veil, a somewhat related theory which applies to breach-of-contract claims. *See Gass v. Anna Hosp. Corp.*, 911 N.E.2d 1084, 1091 (Ill. App. Ct. 2009). For now, it is enough that Patrick does not allege in her complaint the requisite facts to support a plausible claim for veil piercing. *See id.*

Purchase Agr. at 37. The "express disclaimer" thus defeats Patrick's argument that Stryker expressly or implicitly assumed Sage's liabilities. *Kaleta v. Whittaker Corp.*, 583 N.E.2d 567, 571–72 (Ill. App. Ct. 1991).

## IV. Conclusion

Stryker's motion to dismiss for failure to state a claim, R. 18, is granted. For now, the dismissal is without prejudice. Patrick may amend her complaint if she believes that she can overcome the flaws discussed in this Opinion. The amended complaint, if any, is due on or before April 15, 2026. If no amended complaint is filed by the deadline, then the dismissal will convert to a dismissal with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2026

7